

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Paul E. Budlow*
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

November 15, 2023

USDC- BALTIMORE
'23 DEC 6 PM 2:12

Andrew C. White
Silverman, Thompson, Slutkin & White, LLC
201 North Charles Street
26th Floor
Baltimore, MD 21201

Marc Zayon
Law Offices of Roland Walker and Marc L Zayon, PA
201 North  Charles Street
Suite 1700
Baltimore, MD  21201

> Re:  *United States v. William Zev Steen*
> Criminal No. SAG-23-102

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, William Zev Steen (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by November 22, 2023, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1.    The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2.    The elements of Count One to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant:

     a.     Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

     b.     For the purpose of producing a visual depiction of such conduct; and

     c.     The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

<u>Penalties</u>

3.     The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|-------|---------|-------------------------------|---------------------|---------------------------|-------------|-------------------|
| 1 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Life (min. 5y) | $250,000 | $100 and $5,000 |

     a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

     b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

     c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664 and § 2259(b)(2)(b).

     d.     Special Assessments: The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013 and may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

     e.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

Rev. August 2018

f.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

g.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Sex Offender Registration

4.      The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.    If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the Government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.    The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify.  If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.    If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case.  Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.    If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization.  The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status.  The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty.  The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

6.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

7.      This Office and the Defendant agree to the following Sentencing Guidelines:

a.      A stipulation of facts is attached as Attachment A to this plea agreement that specifically establishes the commission of additional offenses than those to which the defendant has agreed to plead guilty.  Pursuant to § 1B1.2(c), those additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses.

<u>Group One: Sexual Exploitation of Jane Doe on or about November 26, 2008 (Count 1):</u>

b.      The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

c.      Pursuant to U.S.S.G. § 2G2.1(b)(1)(A), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense.  [Subtotal: 36].

d.      Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact.  [Subtotal: 38.]

e.      Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant.  [Subtotal: 40].

<u>Group Two: Sexual Exploitation of Jane Doe on or about December 3, 2008 (Count 2):</u>

f.      The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

g.      Pursuant to U.S.S.G. § 2G2.1(b)(1)(A), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense.  [Subtotal: 36].

h.      Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact.  [Subtotal: 38.]

i.      Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant.  [Subtotal: 40].

5

Group Three: Distribution of Child Pornography:

   j. Pursuant to U.S.S.G. § 2G2.2(a)(2), the base offense level for distribution of child pornography is 22.

   k. Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the material involved a prepubescent minor or a minor who had not attained the age of twelve (12) years. [Subtotal: 24].

   l. Pursuant to U.S.S.G. § 2G2.2(b)(3)(F), there is a two (2) level increase because the Defendant knowingly engaged in distribution. [Subtotal: 26].

   m. Pursuant to U.S.S.G. § 2G2.2(b)(4) there is a four (4) level increase because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence; or sexual abuse or exploitation of an infant or toddler. [Subtotal: 30].

   n. Pursuant to U.S.S.G. § 2G2.2(b)(5) there is a five (5) level increase because the Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. [Subtotal: 35].

   o. Pursuant to U.S.S.G. § 2G2.2(b)(6) there is a two (2) level increase because the offense involves the use of a computer or an interactive computer service. [Subtotal: 37].

   p. Pursuant to U.S.S.G. § 2G2.2(b)(7)(D) there is a three (3) level increase because the offense involved 150 or more images. [Subtotal: 40].

Grouping:

   q. There are 3 groups with the highest offense level of 40 (Groups One, Two and Three) for a total of 3 units. Thus, pursuant to U.S.S.G. §§ 3D1.4, 3 levels are added to the highest offense level. [Subtotal: 43].

  8. This Office does not oppose a two (2) level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one (1) level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. [Total: 40].

Rev. August 2018

Chapter Four Enhancement:

9.     Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. [Subtotal: 45].

10.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

12.     At the time of sentencing, this Office agrees to recommend a sentence of no more than **twenty-eight (28) years** of imprisonment. This Office and the Defendant reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).

13.     This Office represents that, provided that the Defendant receives a sentence pursuant to this plea agreement, the Baltimore City State's Attorney's Office will enter a nolle prosequi in the following cases in the Circuit Court for Baltimore City:

      i.   State of Maryland v. William Zev Steen, # 122349021; and
      ii.  State of Maryland v. William Zev Steen, # 122349022.

14.     At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

15.     The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

## Waiver of Appeal

16.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

      a.   The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground

7

whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

17. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including the following items at one time possessed or owned by the Defendant:

i. Kingston 2GB Micro SD card, S/N 0838K01707Y, a product of Japan; and

ii. Apple MacBook, Model A1990, S/N C02Z7D4YLVCF, a product of China.

c. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title

Rev. August 2018

to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

        e.      The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

        18.      The Defendant understands that he would have a right to file a claim to the Abandoned Property under 41 C.F.R. § 128-48.102-1 and waives his right to claim the Abandoned Property under 41 C.F.R. § 128-48.503. The Defendant agrees not to contest the vesting of title of the Abandoned Property in the United States Government and agrees to unconditionally release and hold harmless the United States Government, its officers, employees, and agents, from any and all claims, demands, damages, causes of actions, suits, of whatever kind and description, and wheresoever situated, that might now exist or hereafter exist by reason of or growing out of or affecting, directly or indirectly, the seizure or waiver of ownership interest in the Abandoned Property. The Defendant agrees to execute any documents as necessary to the waiver of right, title and interest in the Abandoned Property, including any forms necessary to effect the Defendant's waiver of ownership interest.

## Restitution

        19.      The Defendant agrees to the entry of a restitution order for the full amount of the Victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation.

        20.      The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

Rev. August 2018

## Restitution in Cases Involving the Sexual Exploitation of Children

21.     Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement.  Further, the defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct.  The defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense.  Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

## Additional Special Assessments in Sex Crimes Cases

22.     Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), since the offense of conviction is under Chapter 110 (relating to sexual exploitation and other abuse of children), the Defendant must pay an additional special assessment of $5,000, unless the Defendant is indigent.

23.     Assessments in Child Pornography Cases: Pursuant to 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Child Pornography Victim Assistance Act "AVAA"), in addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess: (1) not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5); (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000 on any person convicted of a child pornography production offense.

## Defendant's Conduct Prior to Sentencing and Breach

24.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

25.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including

Rev. August 2018

statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

26. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

27. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.


Very truly yours,

Erek L. Barron
United States Attorney


Paul E. Budlow
Michael F. Aubin
Assistant United States Attorneys

Rev. August 2018

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11|28|2023
Date

William Zev Steen

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

11 · 28 · 2023
Date

Andrew C. White, Esq.

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

11/28/2023
Date

Mark Zayon, Esq.

Rev. August 2018

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

William Zev Steen ("Steen"), age 45, is a resident of Baltimore, Maryland. As detailed below, between 2005 and 2011, Steen sexually abused ▮▮▮▮▮▮▮▮▮▮ Jane Doe, who was between the ages of 2 and 8 at the time of the abuse. Steen produced images and videos of himself and Jane Doe engaged in sexually explicit conduct on at least two occasions in 2008. Additionally, in 2022, Steen collected and shared child pornography using a Peer-to-Peer file sharing network.

Jane Doe was born in 2003. Starting at approximately age 2, Steen regularly sexually abused Jane Doe in his home in Baltimore City. Steen's abuse included causing Jane Doe to be naked in a bed with Steen, who was also naked. Steen caused Jane Doe to sit on top Steen, including genital to genital contact, until Steen ejaculated. Steen continued to abuse Jane Doe in this way until Jane Doe was at least 8 years old.

Steen used a Canon PowerShot A450 digital camera and other digital cameras to produce videos of the abuse. At some point before 2022 the videos were deleted, and the video files were broken into thousands of image files. The image files from two of those recordings were located on Steen's Kingston 2GB Micro SD card, S/N 0838K01707Y, a product of Japan, which was seized from his residence as indicated below.

Steen produced the following videos and images of his abuse of Jane Doe:

Group One: Sexual Exploitation of Jane Doe on or about November 26, 2008 (Count 1):

On November 26, 2008, Steen sexually abused Jane Doe in a bedroom in his residence. The images of the abuse were located on the Kingston SD card and depict Jane Doe and Steen, both fully naked, on a bed, with Jane Doe sitting on top of Steen, straddling his torso. Jane Doe's anus and genitals are depicted, and Steen's penis is between Jane Doe's legs, in contact with Jane Doe's genitals. In some of the images Steen is holding his penis on Jane Doe's buttocks, and what appears to be ejaculate is on Jane Doe's buttocks. Jane Doe was 5 years old.

Group Two, Attempted Sexual Exploitation of Jane Doe on or about December 3, 2008 (Count 2):

On December 3, 2008, Steen sexually abused Jane Doe in a bedroom in his residence. A partial video and images of the abuse were located on the Kingston SD card. The video is 1-2 seconds in duration, is in the same room as Count 1. The video depicts Steen naked, setting up the camera to record the bed. The images of the abuse from December 3, 2008 depict Steen with his genitals and buttocks exposed, sitting on the bed, as Jane Doe is sitting on top of Steen, straddling his torso. Both Steen and Jane Doe are naked. Jane Doe was 5 years old.

1

<u>Group Three: Distribution of Child Pornography (Agreed Conduct):</u>

In 2022, Steen used Peer-to-Peer (P2P) program on his computer to collect and share child pornography. In the summer and fall of 2022, a Baltimore City Police Department detective used a computer connected to the internet and launched a publicly available P2P file sharing program which identified that Steen had files containing child pornography available for download. The detective used the P2P program to download files depicting children engaged in sexually explicit conduct directly from Steen's computer on numerous dates between July 2022 and October 2022, including, but not limited to, the following:

| Date | Description (selected files or file names) |
|---|---|
| July 11, 2022 | -A video file depicting a nude prepubescent female straddling a nude prepubescent male. An adult hand enters the frame from outside of view and inserts the male's penis into the anus of a prepubescent female.<br><br>-A video file depicting a prepubescent female wearing a blue collar performing oral sex on an adult male. |
| July 22, 2022 | - A video file depicting a nude prepubescent female sitting on a toilet. An adult male is masturbating and ejaculating onto the minor, who then licks ejaculate.<br><br>- A video file depicting a nude prepubescent female wearing a purple and gold mask in a bathtub. The victim is spreading her legs and exposing her vagina. A person off camera then urinates on the minor. |
| October 11, 2022 | The following files were downloaded (selected):<br><br>- St_Petersburg-I01 - Kimmy gives blowjob to man who cums on her face.avi<br>- 2boy1woman_09.avi<br>- Lisa-slip 8yr oral-nightshot.wmv<br>- ytkindsister_dog_and_pussy_18.05.2011.avi<br>- pthc new 2012 12yranska web.avi<br>- blond hot 12yo.mp4<br>- 14 yr old Sierra.avi<br>- (pthc) dad and cumming in toddler.avi |
| October 27, 2022 | The following files were downloaded (selected):<br><br>- (pthc) my best friend fucks my daughter 13yr for- 300 dollars, i films everything as a souvenier.wmv<br>- 13yo fucked.mp4 |

On November 3, 2022, a search warrant was executed at Steen's residence in Baltimore City. During the search, investigators seized Steen's laptop and SD card, both of which contained depictions of child pornography, and are further described as:

    a.   Kingston 2GB Micro SD card, S/N 0838K01707Y, a product of Japan; and

    b.   Apple MacBook, Model A1990, S/N C02Z7D4YLVCF, a product of China.

The laptop was running the P2P program at the time it was seized. An examination of Steen's laptop revealed multiple link files indicative of child pornography (file names associated with having been played in the VLC video player), including the following:

- PTHC_2011 trailer-buratino (great).avi
- Pthc new 2014-TAMARA 10yo_WMV V9.mp4
- Pthc (Jack H'Off) Masked Girl Rides Again 2.mpg
- Sister 10y with brother webcam.avi
- PTHC – 8 yr naughty.wmv
- brother-fucks 8yr sister.avi

Four files depicting child pornography were located on the laptop, one of which depicts a minor female with blond hair with her mouth open around the erect penis of an adult male.

The defendant agrees that all of the images and videos described above were produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

All of the events described above occurred in the District of Maryland.

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

_____
William Zev Steen

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

_____
Andrew C. White, Esq.
Counsel for Defendant

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

Mark Zayon, Esq.
Counsel for Defendant

Rev. August 2018

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

Mark Zayon, Esq.
Counsel for Defendant

Rev. August 2018