IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES | * | |
| v. | * | Criminal No. 1:23-cr-00102-SAG |
| | * | |
| WILLIAM ZEV STEEN | * | **UNDER SEAL** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**DEFENDANT'S SENTENCING MEMORANDUM**</u>

COMES NOW the Defendant, William Zev Steen, by and through counsel, Andrew C. White and Marc Zayon, and hereby submits this sentencing memorandum in the above-captioned case.

Mr. Steen pleaded guilty on December 6, 2023, to Count One of the pending Indictment charging him with Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a). The final sentencing guidelines level in this case is forty-five (45). The government has agreed to make a sentencing recommendation that will not exceed twenty-eight (28) years. **For the reasons below, we respectfully submit that a sentence of fifteen (15) years is reasonable under the circumstances of this case.**

**A.   THE UNDERLYING CASE**

This case arises from actions that took place sixteen (16) or more years ago ███████████ ████████████████████████████████. When ████████████████████, Mr. Steen sexually exploited her by creating a video of her naked straddling his naked body for his sexual gratification. ████ was unaware of Mr. Steen's intent at the time, and she has no recollection of the events today.

These actions came to light in 2013, when Mr. Steen's wife, Rebecca "Rivky" Steen, then pregnant with the couple's seventh child, discovered pornography on a laptop computer used by

her husband.  Ms. Steen confronted her husband about her discovery.  Mr. Steen admitted he possessed the images and Ms. Steen immediately contacted their family Rabbi.  The couple met with Rabbi Neuberger, who arranged for the couple to see a therapist who specializes in trauma therapy, a type of psychotherapy designed to help manage the impact of traumatic events on people's lives and relationships.

The Steens met both as a couple and individually with the therapist on regular basis for about one year.  Early on in this counseling, Mr. Steen admitted to his actions with ███ and asked for help.   The Steens also immediately arranged treatment for ██████████████████ and sought to repair the damage done to their family.   ███ began working regularly with an experienced therapist, though she had no recollection of the events.

The Steens continued in regular psychotherapy, both individually and as a couple.    In therapy, Mr. Steen detailed his actions ████████ to both his wife and therapist.    Due to the progress made in therapy, Ms. Steen agreed to keep the couple's marriage intact and provide their children with a stable family environment.   Ms. Steen gave birth to ██████████ in late 2013. All of the Steen children have excelled in school and became closer together as a family since 2013.

In the late summer and fall 2022, police officers, using software designed to uncover the transmission of child pornography, discovered that a computer located at the Steen residence contained illegal images.   In November 2022, police executed a search warrant at the residence. In that search, police recovered images of child pornography on a laptop belonging to Mr. Steen. They also recovered a Micro SD card that contained previously deleted video files that had been broken into thousands of pieces as a normal by-product of the deletion process.   Using specialized

software, the police recovered still images, which depicted Mr. Steen's actions ▊ almost

fifteen (15) years earlier.[1]

After police recovered the deleted video, they arranged for therapists with the Center for

Hope at Sinai Hospital to conduct forensic interviews of each of the Steen children ▊▊▊▊

▊▊▊▊.  These interviews were conducted in a controlled environment while a team of

law enforcement agents watched through a one-way mirror.  Therapists determined that none of

the Steen children had had inappropriate contact with their father.

During the search of the Steen residence, police also recovered a private journal kept by

Ms. Steen at the family residence.  In that journal, Ms. Steen described her thoughts, feelings and

reactions to Mr. Steen's abuse ▊▊▊.  She also wrote of her and her husband's psychotherapy

sessions.  This, in turn, allowed police to recover the therapist's records for both Mr. & Ms. Steen

that provided much of the detail found in the charges in this case.

      **B.**      **BACKGROUND**

***Upbringing***

William Zev Steen is a 46-year-old father of seven children ranging in age from 10 to 23.

Both of his parents, Franklin and Paula Steen are accomplished educators who have held several

prestigious teaching positions in the United States and overseas.  Zev was born in 1978, in

Hamburg, Germany, where both parents both worked as teachers.[2]  He spent the first five years

of his life in Germany, where he learned to speak German and became accustomed to German

culture.

---

[1]      Because the images were created from the video's deletion, they were accessible only using specialize recovery software and were not accessible by Mr. Steen.

[2]      Mr. Steen taught Math and Physics in a secondary school in Hamburg for almost nine years. Paula Steen taught English, German, and Religion.  Both taught classes completely in German.





**Zev with his mother 1978**                    **Zev with his father in Hamburg, Germany in 1979**

His parents moved back to the United States in in 1982 after his father accepted a position as a Computer Science teacher at the Choate School in Wallingford, Connecticut. The family lived in a house on the school's campus and Zev attended a local public school where he struggled to adapt to the United States and learning English.



**Zev and his brother Dan circa 1984**

Four years later, in 1986, Franklin Steen received a prestigious fellowship at Columbia University and the family moved to Manhattan.   The family lived in a one-bedroom apartment -- Zev and his brother, Dan, slept in a bedroom while their parents slept in the living room.  Rather than attend public schools, both Steen boys attended a Jewish Day School in Manhattan.

The next year, in 1987, the Steen family left New York and moved back to Connecticut. The family settled in New Haven and the boys attended a nearby Chabad school.   Franklin Steen completed his Ph.D. in Mathematics from Columbia University in 1990, while still working at Choate. [3]



Steen family in 1989

In 1991, Franklin Steen left Choate and took a job as the Director of Instructional Computing at Yale University.  The following year, in 1992, Zev travelled to Maryland to attend high school at the Israel Henry Beren High School, a boarding school in Baltimore.

---

[3]      In 1994, while Zev was in Baltimore, his family moved to Brookline, Massachusetts, after Franklin Steen accepted a position as the Director of Computing for the Faculty of Arts & Sciences (FAS) at Harvard University.

 

**Zev (left) and siblings as he was about to attend High School**          **Family outing in 1995**

Zev graduated from the High School in 1996. He then attended Ner Israel Rabbinical College in Baltimore. Zev earned a Bachelor of Arts in Religious Studies as well as a master's degree in religious studies from Ner Israel in 2003.

*<u>Family</u>*

Mr. Steen met Rebecca Elaine Paige (Rivky) in the spring 2000 (pictured below), after being matched up on a blind date at the Piney Run Park in Eldersburg, Maryland. Zev was a full-time student at Ner Israel and Rivky was studying audiology at Towson University. She also worked part-time as a receptionist at Commerce Title in Pikesville, Maryland.

          

The first date went well.  Rivky was drawn to Zev's intelligence and sense of humor and Zev felt likewise.  Soon thereafter, the Steen and Paige families met, and a greater family was born.  Zev and Rivky were married on September 17, 2000.



7

██████████████ ██ ███████████████████████████████████████████████

████████████████████.

The Steen family is exceptionally close.   They live in a modest home in Pikesville and the house is a beehive of activity at night.  All the children help around the house and help each other out almost as a team.



Both Zev and Rivky have been active in each of their children's lives.  Even after being charged and arrested in this case, Zev spent hours on the phone each night from the Howard County Detention Center speaking with the kids and helping them with their homework.   Despite the charges in this case, each of the Steen children love their father and each child wants him to return home as soon as possible.  Each child has also written letters to the Court in support of their Dad.[4] While these letters are being submitted as separate exhibits, We have included portions of each letter below.

---

████████ ████████████████████████████████████.







### *Employment*

Mr. Steen worked the equivalent of three (3) full-time jobs for eight years before his arrest. He was employed as a teacher at Bnos Yisroel, a private school in Baltimore.  He also maintained a second job as a Director at Technology Awareness Group, a non-profit organization based in Baltimore.  Zev had a third job working with his brother Dan to start a business named MirageID. MirageID designed and developed software for corporate clients.  Dan handled software development and Zev was responsible for investor relations and securing new investments. Because the company was brand new, it made no money.  All funds were plowed back into developing the business.  These three jobs collectively did not pay well – only about $27,000 per year – and the family struggled to make ends meet.  Duct tape was used to make sneakers last longer and Rivky used an iron to put patches on pants and shirts that were roughed up by everyday use.   Credit card debt was high and it seemed that the family received calls from creditors every day, including a foreclosure notice.  But while the family did not have significant income, all four girls' tuition was paid by Bnos Yisroel because of Zev's status as a teacher and each of the three boys attended quality religious schools at reduced tuition.   Education was and is a top priority in the Steen family.

Despite the significant stress of working three full time jobs, Zev always found the time to support his family.  As is evident from the letters from his children, he is a dedicated father and each of his children has thrived despite the family's lack of income.  In many ways, coming home each night to a house full of children was in many ways a relief for Zev Steen.  Despite the financial struggles, he is very proud of his children's development and success.

### *Effect of the Current Charges on the Family*

This criminal case has put a tremendous strain on the Steen family.   Rivky Steen worked hard to heal herself and her family in the aftermath of her husband's disclosure in 2013 of his

conduct ████. The road to psychological repair is long and, in many ways, endless, requiring constant adjustment and forgiveness. Zev Steen was doing his part as a committed and loving father to his family and his love has helped each of his children to thrive. But his 2022 arrest in this case has created a palpable void that each member of the family experiences every day. This much is seen in the letters written to the Court by the Steen children. It is also described by Rivky Steen:

> *beneath all of this, lies unadulterated pain. Zev's abrupt removal from our family has caused inordinate damage to each one of us. Zev is an extremely devoted father. He has given the very fiber of his being to his family and children. He is the one who did STEM projects with our children and developed their interest in that. He cultivates each child's unique interest.* ████████████████████████████
> ██████████████████████████████████
> ██████████████████████████████████
> ██████████████████████████████████
> ██████████████████████████████████
> ██████████████████████████████████
> ███████████████.
>
> ████████████████████████ ██████
> ██████████████████████ ██████
> ██████████████████████████████████
> ██████████████ ████████████████████
> ██████████████████████████████████
> ██████████████████████████████████
> ██████████████████████████████████
> ██████████████████████████████████
> ██████████████████████████████████
> ██████████████████████████████████
> █████████████.



### _Reaction to Incarceration_

Despite being incarcerated for almost two years, Mr. Steen has continued to play a role in the lives of his children.   After his initial arrest on related State charges, he talked on the phone with his children every school day and helped them with homework.  He also spoke with each child about their day and how they were doing.  The kids very much looked forward to the precious time on the phone with their Dad.   Once federal charges were brought, Mr. Steen was no longer able to speak with his children as easily and he is no longer able to help them with schoolwork or anything else.  Again, the kids very much miss their father.

But Mr. Steen has written numerous letters to his children and he continues to support them and encourage them.   He has done everything in his power to remain a positive force in his children's lives.  For example, in a recent letter ▆▆▆▆▆, he wrote in part:

███ you are amazing! you have an innate ability to read situations and people. This gives you the power to make great friends and figure out what people expect and how they see the things around them. (I think this is what gives you the ability to figure out what's in style in the wardrobe department.) you are smart and have potential to be successful n numerous areas. you want to do what is 'ight but you are unsure what is right 'or you.

עולם הדמיון אֱמת - The land of diesel שׁלק has a special קֶשֶׁר that allows you to understand things beyond your normal capabilities. This can often cause confusion because it is gives you more insight into all the areas of life about which you are concerned and consideing.

During this time, strengthen yourself. I daven for your success and safety multiple times a day. There are a lot of things I ask for you.



ה should guide you to make the right choices.

you should have the strength to motivate yourself to do what you need to reach your goals.

ה should give you tremendous growth in diesel שלק.

שׁלימות in גדולה when the time comes.

Mr. Steen also wrote a letter to ███:

Have you ever thought about getting a letter from prison? I would not want to deprive you of that dubious honor.

Thank you so much for stepping in at home and helping with the things I can't be there to do. We can't always choose the situations that HaShem puts us in but we can choose what we do with it. I guess you get tossed into helping run a family before you expected.

The people I meet here grew up never knowing who would be in their house when they came home each day. They would get a new step-mom and step-siblings, get to know them, then find they have been replaced by another step-mom and step-siblings. The only stability they could find were the gangs in the streets who would protect them and have their back... until they didn't. They don't know what a family is. They don't know what a marriage is. They don't even understand those concepts.

Keep working and growing. It is amazing how far you have come. I am proud of you.

Love, Tatty

Mr. Steen has also spent a great deal of time working positively with fellow inmates while at the Howard County Detention Center.  In fact, his work with inmates at that facility prompted Rabbi Sholom Reindrop, the Jewish Chaplin at the detention center, to write a letter (attached) to the Court.   In that letter, Rabbi Reindrop writes in part:

# JEWISH INCARCERATED FAMILY SERVICES



Stephanie A. Gallagher
District Judge
101 West Lombard Street Chambers 7C
Baltimore, MD 21201

July 7th 2024

Dear Judge Gallagher,

In my capacity, I also serve as a Jewish chaplain at the Howard County Detention Center where I had the privilege of visiting Mr. William Steen regularly for this past year. Through our interactions, I came to understand the depths of his character and his unwavering commitment to personal growth and helping others. William's dedication to his faith and continuous pursuit of self-improvement were truly inspiring to witness.

William's genuine and caring nature shone through in his interactions with fellow inmates. He not only focused on his own growth but also made it his mission to uplift and inspire those around him. I observed firsthand how he shared his wisdom, faith, and moral guidance with his cellmates, encouraging them to transform their lives and strive for personal betterment.

William was very open to guidance and rabbinic counsel, drawing strength and guidance from his faith and always seeking ways to learn and grow. His willingness to share valuable lessons with others and inspire positive change within his community speaks volumes about his compassionate and authentic character.

In short, Mr. Steen has continued as a positive force to help his family and others despite the charges in this case and his incarceration.   This, frankly, speaks volumes about the man.

### C.  SENTENCING FACTORS

This memorandum is submitted to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a) under *United States v. Booker*, 543 U.S. 220 (2005).  The Court is no doubt aware of the broad ramifications of *Booker* for this proceeding.

In *Booker*, the Supreme Court restored this Court's ability to fashion a sentence tailored to the unique circumstances of each case and each criminal defendant by requiring courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines. *United States v. Hughes*, 396 F.3d 374, 381 (4th Cir. 2005).  Thus, although this Court still must take the Sentencing Guidelines into account, *Booker* rendered the Sentencing Guidelines advisory. *See Gall v. United States,* 128 S. Ct. 586, 594 (2007); *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007).  The sentencing guideline range is no longer binding on the Court but is only one of

several factors in §3553 (a) to be considered in determining the sentence. *Booker*, 543 U.S. at 258-60. *See also Nelson v. United States*, 129 S. Ct. 890 (2009) (per curiam); *Spears v. United States*, 129 S. Ct. 840 (2009) (per curiam).

In considering the § 3553(a) factors, the sentencing guidelines are to be given no more or less weight than any other factor. And the Guidelines are not to be given any "presumption of reasonableness." *Rita v. United States*, 127 S. Ct. 2456 (2007). The "overarching" command of § 3553(a) is the Parsimony Clause, which "instruct[s] district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 128 S.Ct. 558, 563 (2007)(quoting *Gall,* 128 S.Ct. at 600).

In *Pepper v. United States*, 131 S.Ct. 1229 (2011), the Supreme Court held that a sentencing court may consider factors prohibited by the advisory sentencing guidelines and may use such factors to reach a just and appropriate sentence even if it results in a dramatic deviation from the Guidelines' recommended sentence.

The result of this line of cases is a movement away from adherence to Guidelines sentences of lengthy incarceration, and toward individualized sentencing, in which the District Court is empowered to impose a just sentence based on the unique characteristics of the defendant and the full nature and circumstance surrounding the offense. As stated by Justice Sotomayor writing for the Court in *Pepper*, this is a return to the federal judicial tradition of sentencing that "punishment should fit the offender and not merely the crime." *Id. at* 1240.

In following this procedure, Mr. Steen respectfully requests that the Court impose the minimum mandatory sentence of 15 years' incarceration.

### 1. *The Advisory Sentencing Guidelines*

The parties agree that the applicable advisory sentencing guideline range for this case dwarfs the 30-year statutory maximum for the charged offense. The guidelines call for a sentence of life

imprisonment even though Mr. Steen has no criminal record and the primary offense in this case occurred over 16 years ago. It is difficult to comprehend how a sentence suggested by the 2G guidelines would in any way further the goals of federal sentencing. As noted by the Second Circuit in *United States v. Dorvee*, 616 F.3d 174 (2nd Cir. 2010),

> Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices. *See Rita v. U.S.*, 551 U.S. 338, 349, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). However, the Commission did not use this empirical approach in formulating the Guidelines for child pornography. Instead, at the direction of Congress, the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties.

*Id.* at 185.

The Second Circuit in that case warned that the application of the 2G guidelines, "*unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires*." *Id.* (emphasis added). The Advisory Guidelines level (46) is substantively unreasonable in this case.

**2.** ***The Nature and Seriousness of the Offense***

The charged offense is very serious – so much so that Congress set a mandatory minimum penalty of 15 years' incarceration. It is important to remember, however, that the charged conduct happened over 16 years ago and has never been repeated since that time. The video depiction was never distributed or transmitted in any way, and it was deleted by Mr. Steen many years ago. Moreover, the victim, ████████, has no recollection of the events, ███████████████████ ████████████████

### 3. *The History and Characteristics of the Defendant*

Zev Steen is a remarkable, yet flawed man.   As is evident from his life story and the letters submitted by his family and others, he and Rivky have raised seven beautiful children, all of whom are smart, talented and independent.   Despite having very little income and working three very stressful jobs, Mr. Steen has ensured that each of his children receives a quality education and gets the parental time and attention necessary to thrive as they grow. They have all been raised with the love and skills to succeed.  The Steen children are a wonderful, direct reflection of their father.



Remarkably, Mr. Steen has preserved despite his incarceration and the dire consequences he faces.  His focus remains on his family, not himself.  There are not many defendants who spend hours on the phone from jail helping their children with homework.  Likewise, there are not many defendants who, in the words of Rabbi Reindrop, "share wisdom, faith, and moral guidance with cellmates, encouraging them to transform their lives and strive for personal betterment."  As an

example, we have set forth below an excerpt from a letter to Mr. Steen from a fellow inmate at the

Howard County Detention Center, Matthew Barth, who benefitted from his time with Mr. Steen

at that facility.

> other reasons, I feel blessed to have "The Way of God"
> book that you gave me. I am reading it slowly
> and trying to extract the "essence" as we did in our
> nightly "lessons". I have many notes and diagrams
> that you would approve of as well.

Larry Tucker, another fellow inmate at the Howard County Detention Center, writes:

> *"Because of my background, I had a particularly difficult time dealing with jail.
> William saw me, noticed my pain and sat down to talk. . . . William is incredibly
> understanding and compassionate.  He helped me to see my situation in a positive
> light instead of being weighed down by unhappiness and misery. . . . Our
> discussions helped me to see that this situation may actually be a blessing.  My
> life is worthwhile. . . I have seen William help others in the same way.  His
> personality is such that he naturally helps others. . . He respects everyone."*

Inmate Alex Kervin wrote a letter on Mr. Steen's behalf.  That letter is attached as a

exhibit and set forth in part below.

From the very first day he became a possitive light in our unit. He has always been a kind, caring and generous person, not just helping if a person is unable to purchase some thing that they need, but generous with his time. He always tries to make the situation better for everyone, this lead him to first being voted by the unit and then assigned by administration as the Unit Liaison to the jail administration. This lead to the unit recleving a large increase in activites and access to beneficial programs. He has done alot for the unit and the people in the unit, but for me he has truly saved a life and sanity. ███████████████████████████████
████████████████████████████████████
███████████████████████████████████
██████████████████████ He truly has always been a positive light in all this hardship and uncertainty, and I will always be grateful of him and consider him a friend.

We submit these letters and anecdotes to illustrate Mr. Steen's positive influence on fellow inmates.

As U.S. District Judge Rakoff noted in *United States v. Adelson*, 441 F.Supp.2d 506, (SDNY 2006):

> But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

441 F.Supp.2d at 513-14.

**4.  *Just Punishment for the Offense and Deterrence of Future Criminal Conduct.***

One of the most important purposes of sentencing is "to protect the public from further crimes." 18 U.S.C. §3553(a)(2)(C).  It is clear from the facts here that Mr. Steen is not a threat to others.  The events ▮▮▮▮▮ happened over 16 years ago and have never been repeated.  Since that time, he has worked three jobs all requiring significant interaction with people and started a business.  He also raised a family of seven in very difficult financial circumstances.  *In short, he has succeeded*.  As the Court can see from the letters submitted by the Steen children, these are wonderful, well-adjusted young people who love their father greatly.   There simply is no need to protect the public from Mr. Steen.

As to just punishment and deterrence, it is important to keep in mind that Mr. Steen faces a minimum mandatory sentence of fifteen (15) years.  This is a huge sentence by any standard and one that Congress believes provides significant deterrence and punishment.  Mr. Steen is 46 years old.  By the time he completes a 15-year sentence, he will be close to sixty (60).  It is difficult to imagine that the Government has any interest in keeping him incarcerated past that point.

It is crucial to keep in mind the following facts about Mr.Steen and this case:

- He has been married for 24 years and has seven wonderful children and a supportive wife, all of whom are struggling with the aftermath of this case;

- Mr. Steen has no prior criminal record at all.

- He has an impressive education and has worked more than full-time for many years while also successfully raising a family.

- His post-incarceration conduct has been stellar.  He continues to help his children and has been a proven positive force for fellow inmates – so much so that the prison chaplain felt compelled to write to the Court.

- He has shown a strong internal motivation to continue to address his psychological issues and still be a positive force in his children's lives.

- The federal courts enjoy a powerful system of supervised release that can effectively monitor activity in these types of cases and ensure public safety while promoting rehabilitation of offenders.  We respectfully submit that Mr. Steen needs effective treatment and monitoring.

But perhaps most importantly, the victim in this case, ████████████████████████ ████████████████████████████████████████████████████.

Given that protecting victims is a recognized goal of federal sentencing, the minimum mandatory sentence of fifteen years is a sentence that provides very significant punishment and is the sentence that reduces harm to the primary victim as much as possible.

A sentence of fifteen years followed by a significant period of supervised release will provide significant punishment, promote respect for the law, provide general and specific deterrence, and will enable Mr. Steen to continue on a positive path in the future.

**D.      SENTENCING REQUEST**

We submit that, under the circumstances of this case, the Court should impose the mandatory minimum sentence of fifteen years, coupled with a significant period of supervised release that includes psychological treatment and computer monitoring.  Such a sentence balances the competing goals of sentencing as set forth in 18 U.S.C. § 3553 and is more than adequate, but not greater than necessary, to meet those goals.

Respectfully submitted,


_____/s/_____
Andrew C. White
Federal Bar No. 08821
Silverman, Thompson, Slutkin & White, LLC
400 East Pratt Street
Suite 900
Baltimore, MD 21201
Telephone: 410-385-2225
Facsimile:  410-547-2432
awhite@silvermanthompson.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of September, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all parties.

                       _____/s/_____
                       Andrew C. White, Esquire
                       Federal Bar No. 08821
                       Silverman, Thompson, Slutkin & White, LLC
                       400 East Pratt Street, Suite 900
                       Baltimore, MD 21202
                       Telephone: 410-385-2225
                       Facsimile:  410-547-2432
                       awhite@silvermanthompson.com